IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Rolando Aldama Ocampo, | : | C/A no: 2:20-cv-4466-TMC-MGB |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **C O M P L A I N T** |
| | : | **(Jury trial demanded)** |
| J. Al Cannon Jr., Willis L. Beatty, Lewis J. "Jackie" Swindler, Dr. Theodolph Jacobs, Dr. James Hurteau, Gerald Joye, Anthony F. Fishburne, Melissa McDermott, Elijah McPherson, Jose Enrico Pura Ragos, Tyrone J. Shaw, Sergeant Last | : : : : : : : | |
| Defendants. | | |

Plaintiff alleges as follows:

**PARTIES**

1.      Plaintiff Rolando Aldama Ocampo (hereinafter referred to as "Plaintiff") was incarcerated at Al Cannon Detention Center from April 12, 2016 until he was transferred to the custody of the South Carolina Department of Corrections.

2.      At the time of the incident at issue in this case, J. Al Cannon Jr., as Sheriff of Charleston County, was running the Charleston County Sheriff's Office (hereinafter referred to as "CCSO"), an agency/entity licensed under the laws of the state of South Carolina. CCSO owns, operates, maintains, controls, and staffs the Al Cannon Detention Center ("SACDC"). At all relevant times, Cannon was a person acting in the course and scope of his duties as Sheriff and was acting under the color of state law.  Cannon is sued in his individual and supervisory capacity.

3.      At the time of the incident at issue in this case, Willis L. Beatty was Deputy Chief of Charleston County Sheriff's Office and Jail Administrator of Sheriff Al Cannon Detention Center.

1

At all relevant times, Beatty was a person acting in the course and scope of his duties as Deputy Chief and Jail Administrator and was acting under the color of state law. At all relevant times, Beatty was a supervisor who had the responsibility to oversee and train SACDC correctional officers, including Joye, Fishburne, McDermott, McPherson, Pura Ragos, Shaw, and Last. Beatty is sued in his individual and supervisory capacity.

4. Lewis J. "Jackie" Swindler, as Director of South Carolina Criminal Justice Academy, was and at all times relevant hereto, responsible for overseeing the South Carolina Criminal Justice Academy ("SCCJA") and training all officers who were employed as correctional officers at Sheriff Al Cannon Detention Center in Charleston, South Carolina during the time set out by this complaint. Swindler is sued in his individual and supervisory capacity.

5. At the time of the incident at issue in this case, Dr. Theodolph Jacobs was an in-house SACDC physician that examined, diagnosed, and treated patients at SACDC, including Plaintiff. Dr. Jacobs is sued in his individual capacity.

6. At the time of the incident at issue in this case, Dr. James Hurteau was SACDC's in-house dentist that examined, diagnosed, and treated patients at SACDC, including Plaintiff. Dr. Hurteau is sued in his individual capacity.

7. Gerald Joye (hereinafter referred to as "Officer Joye") was and at all times relevant hereto, employed as a correctional officer at Sheriff Al Cannon Detention Center in Charleston, South Carolina and was acting as an agent and/or employee in the course of the scope of his official duties with the Defendant CCSO. Joye is sued in his individual capacity.

8. Anthony Fishburne (hereinafter referred to as "Operator Fishburne") was and at all times relevant hereto, employed as a Correctional Operator at Sheriff Al Cannon Detention Center in

Charleston, South Carolina and was acting as an agent and/or employee in the course of the scope of his duties with the Defendant CCSO. Fishburne is sued in his individual capacity.

9. Melissa McDermott (hereinafter referred to as "Officer McDermott") was and at all times relevant hereto, employed as a correctional officer at Sheriff Al Cannon Detention Center in Charleston, South Carolina and was acting as an agent and/or employee in the course of the scope of her duties with the Defendant CCSO. McDermott is sued in her individual capacity.

10. Elijah McPherson (hereinafter referred to as "Operator McPherson") was and at all times relevant hereto, employed as a correctional Operator at Sheriff Al Cannon Detention Center in Charleston, South Carolina and was acting as an agent and/or employee in the course of the scope of his duties with the Defendant CCSO. McPherson is sued in his individual capacity.

11. Jose Enrico Pura Ragos (hereinafter referred to as "Operator Ragos") was and at all times relevant hereto, employed as a correctional Operator at Sheriff Al Cannon Detention Center in Charleston, South Carolina and was acting as an agent and/or employee in the course of the scope of his duties with the Defendant CCSO. Ragos is sued in his individual capacity.

12. Tyrone Shaw (hereinafter referred to as "Sergeant Shaw") was and at all times relevant hereto, employed as a correctional Sergeant at Sheriff Al Cannon Detention Center in Charleston, South Carolina and was acting as an agent and/or employee in the course of the scope of his duties with the Defendant CCSO. Shaw is sued in his individual and supervisory capacity.

13. Sergeant Last was and at all times relevant hereto, employed as a correctional Sergeant at Sheriff Al Cannon Detention Center in Charleston, South Carolina and was acting as an agent and/or employee in the course of the scope of his duties with the Defendant CCSO. Last is sued in his individual and supervisory capacity.

14. Upon information, Defendants are all still employees of the Sheriff Al Cannon Detention Center, and one or more of the Defendants are citizens of counties located within this division.

## JURISDICTION/VENUE

15. Plaintiff brings this action under 42 U.S.C. §§ 1983 to vindicate his rights guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

16. Venue is proper in this district under 28 U.S.C. § 1391 as the most substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTUAL ALLEGATIONS

17. On November 18, 2017, Plaintiff was serving his sentence at Al Cannon Detention Center in Charleston, South Carolina.

18. On or about the aforementioned date, Plaintiff reported to Sergeant Last that his commissary was stolen by Inmate Jackson Damon (hereinafter known as "Inmate Damon").

19. Inmate Damon was found guilty regarding the above referenced incident by SACDC in-house counsel and was sentenced to serve time in the Behavior Modification Unit (hereinafter known as "BMU").

20. As a result of this incident, Inmate Damon was listed as an "Enemy" on Plaintiff's "Keep Away" list.

21. On December 28, 2017, Plaintiff was assaulted by two of Inmate Damon's friends: Inmate Stanley Edwards and Inmate Byron Rivers (hereinafter known as "Inmate Edwards" and "Inmate Rivers").

22. Plaintiff was walking in the main area of unit A3L with inmate/witness Matt Villeponteaux, when one of the aggressors asked to trade a bag of spicy potato chips for some fish.

23. Plaintiff went to get the fish and walked to back to Inmate Rivers' cell where Inmate Edwards was standing outside of the cell door.

24. Inmate Edwards lured Plaintiff inside of Inmate Rivers' cell and then proceeded to ensure that no one disturbed said cell.

25. Once Plaintiff was lured into the cell, Inmate Rivers began to attack Plaintiff by hitting him with a sock full of batteries on the right side of Plaintiff's face and head. Plaintiff was unable to escape the cell.

26. Inmate Rivers hit Plaintiff with this weapon approximately five to six (5-6) times, at which point the sock broke open; Inmate Rivers threw Plaintiff to the floor to continue punching Plaintiff with his fists.

27. Plaintiff cried for help; violations in policy, lack of training, and the delay in the response of any correctional officer to come to Plaintiff's aid led to the Plaintiff being severely injured.

28. Officer Joye was the first to arrive to Plaintiff's aid and escorted Plaintiff to his desk, at which time Sergeant Last, Sergeant Shaw, and Operators Fishburne, McPherson, and Ragos entered. Plaintiff was then escorted to the medical office. Inmate Rivers was escorted to the Special Management Unit (SMU) to await a Disciplinary Hearing. Sergeant Shaw spoke to Plaintiff and further identified that Inmate Edwards was also involved, leading Operator Fishburne to enter Unit A3L to escort Inmate Edwards to the SMU for a Disciplinary Hearing.

29. Plaintiff's injuries were severe to the point that Plaintiff had to be transported by ambulance to the Medical University of South Carolina (herein after "MUSC").

30. Plaintiff arrived at MUSC, where numerous X-rays, CT Scans, lab tests, and an EKG were performed.

31.     Plaintiff received four to five stitches on his right leg under the knee and was admitted for observation.

32.     Plaintiff was discharged from MUSC on December 29th, 2017 and transferred back to the correctional infirmary where Plaintiff would remain for twelve (12) days.

33.     On January 2, 2018, Plaintiff was taken to MUSC for problems with his right eye.

34.     On January 16, 2018, Plaintiff was taken to MUSC again for problems with his right eye and vision disturbances, at which time he was prescribed eyeglasses.

35.     The correctional facility did not provide Plaintiff with the prescribed eyeglasses despite Plaintiff having filed numerous complaints regarding his need for the eyeglasses and the pain he was suffering.

36.     On or about February 9, 2018, a SACDC Nurse informed Plaintiff that Plaintiff had to buy the glasses or should have one of his family members buy the eyeglasses, as the correctional center was unable to provide the glasses that the doctor prescribed to Plaintiff.

37.     On February 14, 2018, Plaintiff called the 114 line to make a verbal complaint regarding the above-mentioned incidents.

38.     On January 24, 2018, Plaintiff was released from the Correctional Infirmary and moved to unit A1D1 cell D2402.

39.     On January 30, 2018, Inmate Damon, who is listed on Plaintiff's Enemy list, was sent to unit A1D1 cell D2416, in the same unit, three doors down from Plaintiff.

40.     Plaintiff's enemy was not to be housed with Plaintiff per SACDC policy.

41.     Inmate Damon entered Plaintiff's cell on or about January 30, 2018 and informed Plaintiff that he knew that Plaintiff "ratted" on him and that Plaintiff was the reason he was sent to the BMU; that was the reason Inmate Damon's friends, Inmate Rivers and Edwards, attacked Plaintiff.

42. Inmate Damon told Plaintiff that another repercussion of his "ratting" was that Plaintiff now owed Inmate Damon ten (10) dollars per day.

43. Plaintiff reported this to Sergeant Sheppard and informed him that Inmate Damon was on Plaintiff's enemy list and should not be housed in the same unit with Plaintiff.

44. Upon verifying this information, Sergeant Sheppard realized that Plaintiff was correct. Despite SACDC's policy, which prohibits inmates from being housed in the same unit with inmates in their "Keep Away" list, Plaintiff was housed with Inmate Damon. Inmate Damon is classified as an "Enemy" in Plaintiff's "Keep Away" list.

45. After this, SACDC did not rehouse Plaintiff's enemy yet instead rehoused Plaintiff to unit and Cell A1C.

46. On or about March 8, 2018, Plaintiff was informed by a doctor that they may need to operate on his face due to bone fractures.

47. On or about March 22, 2018, Plaintiff complained to SACDC that his teeth were bothering him.

48. SACDC sent Plaintiff to Dr. James Hurteau, the in-house Dentist, where Plaintiff was given an exam and x-rays and an estimate of what it would cost Plaintiff.

49. On May 23, 2018, SACDC took urine samples from Plaintiff due to kidney problems associated with the mass quantities of NSAID painkillers being given to Plaintiff.

50. On February 26, 2018, Plaintiff completed forms to file a 1983 lawsuit against Defendants, and gave those forms to the Sergeant Lupsey to be mail to the District Court in Columbia, SC.

51. On August 20, 2018, Plaintiff filed a Motion to Dismiss Without Prejudice the claims brought under the 1983 lawsuit. United States District Judge, Timothy M. Cain, Granted Plaintiff's

Motion to Dismiss and the Order to Dismiss without prejudice was issued on October 17, 2018 (2:18-cv-00562-TMC).

52. To date, Plaintiff still has pain on the right side of his face, vision disturbances and tooth damage that has gone untreated.

53. Plaintiff has lost feeling in the upper part of his lip, has lost some teeth, experiences headaches often, has discoloration on the right side of his face, and has suffered severe emotional distress.

54. Plaintiff also experiences a genuine fear of African American Inmates, for Plaintiff recognizes retaliation is unavoidable.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

55. The Plaintiff exhausted all administrative remedies available to him. Defendants operated as a simple dead end – with officers and administrators unable or consistently unwilling to provide relief to aggrieved Plaintiff.

56. As set forth above, Plaintiff made various complaints regarding the medical treatment he received, or rather the lack thereof. Plaintiff was never provided with the care from specialists that he required and still suffers from extremely poor vision in his right eye and worsening vision in his left, numbness on the right side of his face, and painful loose and falling out teeth. Despite various medical and dental exams by SACDC, nothing was done to ultimately remedy the pain he continues to suffer, other than provide NSAID pain relievers that have severely damaged his kidneys.

57. Jail officers and administrators failed to keep Plaintiff from his aggressors during the initial attack, with enough time elapsing between the attack and intervention for his aggressors to cause serious harm to Plaintiff. Not only were his aggressors acting on behalf of Plaintiff's known

enemy, Inmate Damon, but administrators proceeded to house Plaintiff with Inmate Damon again shortly following the attack. After an inevitable confrontation with enemy Inmate Damon, Plaintiff was forced to report this to SACDC officials for his own safety, before SACDC had realized their mistake.

58. Notwithstanding Plaintiff's many reports and complaints, SACDC medical and administrative staff repeatedly failed Plaintiff, violating their own policies in their mishandling of the incident.

59. Despite his injuries, Plaintiff was able to file a 1983 *pro se* lawsuit against J. Al Cannon Jr. and Dr. Theodolph Jacobs on February 26, 2018 in what he felt was his only option to find relief for his suffering. However, Plaintiff did not have access to the records necessary to support his case and thought it was in his best interest to request the case to be dismissed without prejudice. As such, all remedies Plaintiff was able to pursue on his own have been exhausted.

## CAUSES OF ACTION

### Count 1: 42 U.S.C. Section 1983 Claim Against All Defendants

60. Plaintiff incorporates all paragraphs above as if fully stated herein.

61. At all relevant times, the Defendants were persons acting under the color of state law, and are sued in their individual capacities for violating the Plaintiff's constitutional rights afforded to him by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

62. At the time of the incident at issue, the Plaintiff had clearly established rights under the United States Constitution:

    a. To be free from cruel and unusual punishment;

    b. To be free from deliberate indifference to a substantial risk of serious harm;

    c. To be free from state created danger;

    d. To bodily integrity; and

    e. To adequate medical care and to be free from deliberate indifference to medical needs.

63. The Defendants violated these clearly established rights in the ways described in summary form herein, and in ways that will be uncovered in discovery and at trial.

64. At all relevant times, Defendants had actual or constructive knowledge that Inmate Damon was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff. The response of Joye and others to that knowledge was so inadequate as to show deliberate indifference to, or express or tacit authorization of, the alleged offensive practices. There was an affirmative causal link between the inaction of Joye and the particular constitutional injuries suffered by the Plaintiff.

65. The unconstitutional misconduct described herein was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

66. As a direct and proximate result of the above constitutional violations, the Plaintiff suffered serious physical and emotional injury.

## DAMAGES

67. Plaintiff incorporates all paragraphs from above as if fully stated herein.

68. Plaintiff asks for judgment against Defendant for the following:

    a. For all available actual, compensatory, consequential, economic, noneconomic, and special damages permitted by law;

    b. For punitive damages;

    c. For attorneys fees and costs;

    d. For any other damages allowed by law; and

      e.      For such other relief as the trier of fact deems just and proper.

## JURY TRIAL DEMANDED

Trial by jury is demanded as to all issues to the extent permitted by law.

Respectfully submitted,

By:   /s/ Dana S. Fields
DANA S. FIELDS
Fields Law Office, LLC
SC Bar No. 76711
Fed. ID No.: 11682df
652 Rutledge Avenue
Charleston, SC 29413
P: 843.718.0741
F: 855.430.6569
danafieldslaw@gmail.com
Attorney for Plaintiff

Dated: December 21, 2020

11